IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARILYN A. ROBINSON                                06-CV-956-BR
                                                   (lead case)
          Plaintiff,                               06-CV-1735-BR
                                                   07-CV-790-BR

v.                                                 OPINION AND ORDER
                                                   (UNDER SEAL)

SAMUEL W. BODMAN, Secretary
of Energy,

          Defendant.


WILLIAM R. GOODE
P.O. Box 250
Glen Mills, PA 19342
(503) 789-6337

          Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
RONALD K. SILVER
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1044

          Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Samuel W. Bodman's Motion to File a Response to Plaintiff's Additional Material Facts (#69), Plaintiff Marilyn A. Robinson's Motion to Strike (#74), Defendant's Motion for Summary Judgment (#26), and Plaintiff's Motion for Partial Summary Judgment (#50).

For the reasons that follow, the Court **GRANTS** Defendant's Motion to File a Response to Plaintiff's Additional Material Facts, **DENIES** Plaintiff's Motion to Strike, **GRANTS** Defendant's Motion for Summary Judgment, and **DENIES** Plaintiff's Cross-Motion for Partial Summary Judgment.

## FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted.

Bonneville Power Administration (BPA), an agency of the United States Department of Energy, employed Plaintiff from 1986 through 2006. In 1997 Plaintiff began working in BPA's Technical Training Center (TTC) in Vancouver, Washington, as a Technical Training Program Specialist. In June 2004, Kim Howell became Plaintiff's supervisor.

In December 2004, Plaintiff suffered a left-eye hemorrhage and, as a result, orally requested to be allowed to telecommute instead of driving to the TTC, which was eight miles from her home in North Portland, Oregon. Howell suggested, however, that

2 - OPINION AND ORDER

Plaintiff work from a desk at BPA Headquarters, which was three miles from Plaintiff's home.

On January 6, 2005, Plaintiff's eyesight deteriorated after working for four hours at BPA's Headquarters.  A fellow employee drove her home.  On January 7, 2005, Plaintiff sent Howell a letter in which she informed Howell that her left-eye vision was "very unstable and unpredictable" and that she had eye surgery scheduled on January 24, 2005.  Plaintiff requested Defendant to accommodate her by allowing her to telecommute "for the periods that I can work surrounding my pending eye surgeries."  On January 10, 2005, Matthew Mactyre, R.N., BPA's Medical Program Manager, sent Plaintiff a letter in which he noted Plaintiff's request for an accommodation and asked to be furnished with information from Plaintiff's medical providers about her condition, job restrictions, and any job duties that her doctors determined she could not perform.

On January 25, 2005, Robert W. Bentley, M.D., Plaintiff's eye doctor, sent Mactyre a letter in which he noted his diagnosis that Plaintiff had a combined cataract and vitreous hemorrhage in her left eye.  Dr. Bentley reported Plaintiff would undergo cataract surgery "soon" and opined she would experience "reduced vision in the left eye for 6-8 weeks after her surgery." Dr. Bentley also advised Mactyre that Plaintiff's surgery had been postponed "because of a medical problem."  Even though

3 - OPINION AND ORDER

Plaintiff could legally drive, Dr. Bentley stated Plaintiff's
depth perception was "reduced," and, therefore, she should not
drive after dark or drive a commercial vehicle.  Dr. Bentley
opined Plaintiff's vision reduction would not be a permanent
restriction, but he could not "reliably indicate when [her]
vision will substantially improve."  Dr. Bentley also advised
Mactyre that Plaintiff's "ability to drive in some settings is
impaired, and computer and reading may require some workplace
modification to allow positioning of reading material/computer
monitor equipment to enhance optimum visibility."

On February 1, 2005, Plaintiff and Howell executed a
Telecommuting Work Agreement, which was designated as
"Situational:  temporary, intermittent, short-term, project-
oriented work" from January 3, 2005, to December 31, 2005.  The
Agreement provided "[e]ither the employee or the immediate
manager may terminate the agreement at any time."  The Agreement
also provided "[e]mployee will maintain a 'successful' job
performance in accordance with the employee's performance plan,
rated by the immediate manager."

On February 25, 2005, Mactyre sent Howell a memorandum
summarizing Dr. Bentley's letter and informing Howell that
Dr. Bentley advised Plaintiff could return to work with the
following limitations:  "May not drive after dark . . . .  Will
need work place accommodations for her reduced vision on a

4 - OPINION AND ORDER

temporary basis to include modification of her computer and additional equipment to aid in reading."

From January 10, 2005, to March 4, 2005, Plaintiff reported 212 hours of work telecommuting, but she did not deliver any work product other than a half-page document for a presentation to a leadership team. On March 1, 2005, Howell sent Plaintiff a memorandum in which she noted she had provided Plaintiff with a laptop for telecommuting, but Plaintiff had been using a "dial-up remote access connection to access the BPA network" that had "proved unreliable due to dropped phone connections." Howell also informed Plaintiff that Mactyre had requested information from Dr. Bentley, and Howell attached Mactyre's summary of Dr. Bentley's recommendations. In addition, Howell advised Plaintiff that BPA's Reasonable Accommodation Coordinator, P.J. Johns, was "working on establishing accommodation for [Plaintiff's] reduced vision" and that the accommodation could "be provided at a BPA work site but cannot be provided at [Plaintiff's] home." Howell, therefore, directed Plaintiff to report to a workstation at BPA Headquarters on March 9, 2005, and to work there temporarily. In response to the restriction that Dr. Bentley placed on Plaintiff to drive only during daylight hours, Howell advised she would adjust Plaintiff's work schedule so she could "start and end [her] work day during daylight hours." Howell asked Plaintiff to contact her with a proposed

schedule and to contact Johns to arrange for an equipment
assessment.

On March 6, 2005, Plaintiff sent Howell a letter in which
she advised her eye surgery had been "conditionally approved" by
her cardiologist and she was scheduled to have the surgery on
March 7, 2005.  Plaintiff noted she was "actually juggling a
number of health issues" in addition to her eye trouble,
including problems from an injury she received on the job in
1999, effects from hip-replacement surgeries, and a heart
condition.  Plaintiff also stated she was having a number of
problems with the computer provided by BPA and her dial-up modem,
but she wanted to continue to telecommute.  Plaintiff also
advised "[t]he cost of moving equipment and furniture and setting
up a temporary work station and performing visual and ergonomic
evaluations should be deferred until my vision is determined."

On March 9, 2005, Howell sent Plaintiff a memorandum in
which Howell advised she had checked again with Mactyre regarding
Plaintiff's limitations and was told the limitations only
pertained to driving after dark and to driving a commercial
vehicle.  Howell noted, however, Plaintiff had implied in her
March 6, 2005, letter that she might have more limitations or
need more accommodation.  Howell, therefore, requested Plaintiff
to submit written statements from her doctors as to whether she
was "released to return to duty, along with [her] current medical

6 - OPINION AND ORDER

restrictions, including any accommodations are needed [*sic*] to help you perform your duties." Howell stated she was "willing to consider any request for reasonable accommodation that is supported by medical documentation" and directed Plaintiff to another BPA employee if she wanted to "renew [her] worker's compensation claim." Howell also informed Plaintiff that she could not continue to telecommute because that arrangement was "not working for [Howell] . . . [because she was] unable to ascertain what work product(s) [Plaintiff had] been producing while [she had] been telecommuting."

On March 11, 2005, Lisa Alberts, M.D., excused Plaintiff from work for 30 days based on "other illness." On March 16, 2005, Dr. Bentley sent a letter to Mactyre to update BPA on Plaintiff's medical status. Dr. Bentley reported Plaintiff underwent cataract surgery on March 7, 2005. Dr. Bentley released Plaintiff to drive only during the day, but he noted Plaintiff felt uncomfortable doing so due to reduced depth perception in her left eye. Dr. Bentley opined Plaintiff "should be able to return to ordinary work tasks at a computer . . . with an appropriate desktop size . . . [and] would not be restricted from work given her current job description as she is described as in a sedentary position and using a computer for most of her work."

On April 6, 2005, Dr. Alberts again excused Plaintiff from

work for fourteen days due to "other illness."  On April 13,
2005, Mactyre sent a memo to Howell in which he reported
Dr. Bentley had released Plaintiff to work with the limitations
of driving only during the day, no driving of commercial
vehicles, and using an "appropriate desktop (monitor) size."
Mactyre also advised he had received "documentation from a
different physician authorizing time loss until April 11th,
2005[, but he had] not received any additional information to
date."

     Dr. Alberts again excused Plaintiff from work from April 25,
2005, through November 7, 2005, due to "other illness," chronic
osteoarthritis requiring hip-replacement surgery, and the need
for physical therapy following surgery.  Dr. Alberts released
Plaintiff to work four hours per day for five days per week
beginning November 7, 2005.  Accordingly, on November 4, 2005,
Howell left Plaintiff a voicemail at her home telling her to
report to work temporarily at BPA Headquarters beginning November
7, 2005.

     On November 14, 2005, Johns sent Plaintiff a memorandum in
which she acknowledged Plaintiff's request for "accommodation for
[her] medical issues.  Specifically [Plaintiff] indicated that
[she has] a medical restriction that precludes [her] from driving
during non-daylight hours."  Johns noted Plaintiff's request
"constitute[s] a request for reasonable accommodation under the

8 - OPINION AND ORDER

ADA."  Johns asked Plaintiff to submit to Mactyre written
statements from Plaintiff's doctors to support her request for
accommodation including, among other things, a "diagnosis of
[her] current medical condition" and any job restrictions or
recommended accommodations.

On November 23, 2005, Howell met with Plaintiff to discuss
her annual Performance Plan and Appraisal for the period from
November 1, 2004, through October 30, 2005.  Howell rated
Plaintiff's performance as "successful."  Defendant, however,
contends Howell rated Plaintiff's performance as successful
because Howell did not have "an opportunity . . . to fully inform
[Plaintiff] of [Howell's] concerns about [Plaintiff's]
performance" due to Plaintiff's extended leave, and, therefore,
it would have been unfair to give her a lower rating because she
did not have "an opportunity to improve that performance."

On December 13, 2005, Dr. Bentley sent a letter to Mactyre
in which he diagnosed Plaintiff with "combined form cataract,"
pseudophakia, and diabetic reinopathy.  Dr. Bentley prohibited
Plaintiff from driving at night, but he noted she "would not be
precluded from working during daylight hours and her corrected
vision is good enough to preclude any need for special
restriction within the work environment beyond her nighttime
driving accommodation."

On December 30, 2005, Dr. Alberts sent a letter to Mactyre

9 - OPINION AND ORDER

in which she noted Plaintiff suffered from osteoarthritis of her back, osteoarthritis of both hips, chronic stable angina, and asthma.  She also had undergone bilateral total hip-replacement surgeries.  Dr. Alberts opined Plaintiff's "impairment from these issues will be lifelong."  Dr. Alberts prohibited Plaintiff from riding public transportation because she experiences angina when she walks more than a block and has mobility issues related to her hip surgeries.  Dr. Alberts opined, however, "I see no reason why [Plaintiff] cannot perform her work activities at a computer station providing she is able to shift positions frequently for comfort, perform minor stretching every hour, and avoid all stair climbing entirely."

On December 20, 2005, and January 3, 2006, Mactyre sent memoranda to Howell informing her that Drs. Bentley and Alberts prohibited Plaintiff from nighttime driving and from using public transportation.

On January 9, 2006, Plaintiff's orthopedist, Gregory W. Irvine, M.D., released Plaintiff to work "regular duty - as tolerated."

On January 12, 2006, Howell and Plaintiff discussed over the telephone the need for Plaintiff to return to work at the TTC. Plaintiff asked Howell to review all of her medical information rather than the summaries provided by Mactyre because Plaintiff believed she was prohibited from driving to work.  Howell

reviewed the medical reports provided by Plaintiff and consulted with Mactyre and Johns, who both agreed the reports did not prohibit Plaintiff from driving during daylight hours.  On January 25, 2006, Howell sent Plaintiff a memorandum in which she advised she had reviewed Plaintiff's medical reports and found they did not contain "anything that would preclude [Plaintiff] from reporting to [her] office in Vancouver and/or require your continued working in Portland."  Accordingly, Howell directed Plaintiff to report to work at the TTC on February 6, 2006; requested Plaintiff to submit a proposed work schedule so she would not have to drive at night; noted Dr. Albert's directive that Plaintiff shift positions and stretch during the day would be accommodated; and advised Plaintiff that the TTC is equipped with a ramp so she would not have to climb stairs to get into the building.  Howell scheduled a meeting with Plaintiff on January 27, 2006, to discuss these issues, but Plaintiff did not attend.

On January 27, 2006, Howell sent Plaintiff an email in which Howell reiterated that Plaintiff's doctors had not prohibited her from working at the TTC.  Howell also expressed concerns about Plaintiff's "apparent lack of productivity/performance" as to a number of projects, reviewed the various projects assigned to Plaintiff, and provided deadlines for Plaintiff either to accomplish them or to provide updates.

11 - OPINION AND ORDER

On February 11, 2006, Plaintiff applied for immediate retirement.  On February 17, 2006, Plaintiff provided the BPA with a letter from Dr. Bentley in which he noted Plaintiff's peripheral vision was less than the requirement for legal driving in Oregon, and, therefore, he had informed the DMV that Plaintiff could no longer drive and recommended suspension of her license.

On March 3, 2006, Johns sent a memorandum to Plaintiff in which she confirmed receipt of Plaintiff's request for telecommuting as a reasonable accommodation that was "submitted through the negotiated bargaining unit grievance process."  Johns noted Plaintiff's current medical restriction as to driving, but pointed out that Plaintiff did not have any "current medical restrictions that impact [her] work" because driving was not an essential function of Plaintiff's job.  Johns, therefore, informed Plaintiff that her request for telecommuting as an accommodation was denied.

Plaintiff's request for retirement was approved May 30, 2006.


## PROCEDURAL BACKGROUND

On July 10, 2006, Plaintiff filed an action in this Court, No. 06-CV-956, against Samuel Bodman, Secretary of the Department of Energy, in which she alleges (1) the BPA failed to reasonably accommodate her by allowing her to telecommute in retaliation for

12 - OPINION AND ORDER

Plaintiff's Equal Employment Opportunity Commission (EEOC) activities, (2) the BPA failed to reasonably accommodate Plaintiff due to her race or color, (3) the BPA failed to reasonably accommodate Plaintiff due to her age, (4) the BPA's denial of Plaintiff's request for accommodation was part of a hostile work environment, and (5) Plaintiff "could perform her duties with the reasonable accommodation requested."

On December 4, 2006, Plaintiff filed another action in this Court, No. 06-CV-1735, against Defendant in which she alleges (1) the BPA failed to make a reasonable accommodation in retaliation for Plaintiff's EEOC activities in violation of the Rehabilitation Act, (2) the BPA failed to reasonably accommodate Plaintiff due to her race or color, (3) the BPA failed to reasonably accommodate Plaintiff due to her sex, (4) the BPA's denial of Plaintiff's request for accommodation was part of a hostile work environment, and (5) Plaintiff "could perform her duties with the reasonable accommodation requested."

On March 9, 2007, Plaintiff and Defendant filed a Stipulation for Partial Compromise and Settlement of Claims in Case Nos. 06-CV-956-BR and 06-CV-1735-BR in addition to two other pending actions in this Court. The parties agreed (1) to consolidate Case Nos. 06-CV-956-BR and 06-CV-1735-BR, (2) to settle all claims in these actions "except for violation of the Rehabilitation Act as set forth in case CV 06-956," and that

(3) Plaintiff would "give up any claim for economic damages for constructive discharge and claim for front pay and any claim for reinstatement."  The Stipulation provided it was in

> full settlement and satisfaction of any and all
> claims that the plaintiff now has or hereafter may
> acquire against Defendant on account of, arising
> out of, or in any way related to any and all
> incidents or circumstances set forth in the
> complaints.

Stipulation at ¶ 6.  Accordingly, the only claims remaining in Case Nos. 06-CV-956-BR and 06-CV-1735-BR are those for violation of the Rehabilitation Act as set forth in Case No. 06-CV-956-BR.

On May 29, 2007, Plaintiff filed another action in this Court, Case No. 07-CV-790-BR, against Defendant in which Plaintiff alleges (1) the BPA constructively discharged her when it directed her to return to work at the TTC, (2) the BPA failed to reasonably accommodate Plaintiff due to her race or color, (3) the BPA failed to reasonably accommodate Plaintiff due to her sex, (4) the BPA failed to reasonably accommodate Plaintiff due to her age, (5) the BPA's denial of a request for accommodation was part of a hostile work environment, and (6) Plaintiff "could perform her duties with the reasonable accommodation requested."

On August 21, 2007, the Court entered an Order consolidating Case No. 07-CV-790-BR with Case Nos. 06-CV-956-BR and 06-CV-1735-BR at the request of the parties.

14 - OPINION AND ORDER

**DEFENDANT'S MOTION TO FILE A RESPONSE TO PLAINTIFF'S
ADDITIONAL MATERIAL FACTS AND PLAINTIFF'S MOTION TO STRIKE**

On November 14, 2007, Plaintiff filed a Reply in support of
her Cross-Motion for Summary Judgment, which included additional
facts.  On December 27, 2007, Defendant filed a Motion to File a
Response to Plaintiff's Additional Material Facts and, at the
same time, filed that Response.  Plaintiff filed a Motion to
Strike Defendant's Response to Plaintiff's additional material
facts on the grounds that it was untimely filed and did not
adequately rebut Plaintiff's additional facts.

Although Local Rule (L.R.) 56.1(f) allows the Court to
refuse to admit Defendant's Response to Plaintiff's Additional
Material Facts as untimely, the Court has broad discretion to
manage its docket and to suspend the effect of the Local Rules in
the interest of justice.  L.R. 1.4.  *See also In re
Phenylpropanolamine (PPA) Prods. Liability*, 460 F.3d 1217, 1227
(9th Cir. 2006)("District courts have an inherent power to
control their dockets. . . .  It is incumbent upon us to preserve
the district courts' power to manage their dockets without being
subject to endless non-compliance with case management orders."
(quotations omitted)).

"The Court should seek to facilitate the development of a
full and factual legal record.  If there is no prejudice to the
non-moving party, the exercise of discretion is particularly
appropriate."  *Id*.

15 - OPINION AND ORDER

Here Plaintiff does not allege any prejudice that she would suffer if the Court permitted Defendant to respond to Plaintiff's additional facts. *See id*. ("A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case."). The Court, therefore, in the exercise of its discretion, grants Defendant's Motion to File a Response to Plaintiff's Additional Material Facts and denies Plaintiff's Motion to Strike.

## PARTIES' MOTIONS FOR SUMMARY JUDGMENT

On August 31, 2007, Defendant filed a Motion for Summary Judgment in the consolidated cases on the grounds that (1) Plaintiff cannot establish she is disabled within the meaning of the Rehabilitation Act, 29 U.S.C. §§ 791-794; (2) Defendant did not take an adverse employment action against Plaintiff; (3) Defendant reasonably accommodated Plaintiff; and (4) Defendant had a legitimate, nondiscriminatory reason for denying Plaintiff's requests to telecommute.

On September 21, 2007, Plaintiff filed a Cross-Motion for Partial Summary Judgment in which she moves the Court to find "as a matter of law in her favor" that (1) Plaintiff is disabled within the meaning of the Rehabilitation Act and (2) Defendant failed to reasonably accommodate her.

16 - OPINION AND ORDER

## Standards

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Villiarimo*, 281 F.3d at 1061. "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving

17 - OPINION AND ORDER

party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

<u>**Discussion**</u>

**I.  Plaintiff's Discrimination Claim under the Rehabilitation Act.**

Plaintiff contends she is disabled within the meaning of the Rehabilitation Act, that she could perform her duties with the reasonable accommodation of telecommuting, and that Defendant discriminated against her when it failed to accommodate her by allowing her to telecommute. Defendant, however, contends Plaintiff is not disabled because driving is not a major life activity; Defendant reasonably accommodated Plaintiff; Defendant did not take an adverse employment action against Plaintiff; and Defendant had a legitimate, nondiscriminatory reason for refusing to allow Plaintiff to continue to telecommute. Both Plaintiff

and Defendant move for summary judgment as to Plaintiff's
discrimination claim.

**A.   Standards.**

Generally, "[t]o state a *prima facie* case under the
Rehabilitation Act, a plaintiff must demonstrate . . . (1) she is
a person with a disability, (2) who is otherwise qualified for
employment, and (3) suffered discrimination because of her
disability." *Walton v. United States Marshals Serv.*, 492 F.3d
998, 1005 (9th Cir. 2007)(citing *Wong v. Regents of the Univ. of
Cal.*, 410 F.3d 1052, 1058 (9th Cir. 2005)).  To state a *prima
facie* case when a discrimination claim is based on a failure to
accommodate, however, a plaintiff must establish (1) she is
disabled, (2) she is qualified, and (3) a reasonable
accommodation is facially possible.  *Pickens v. Astrue*, No.
06-35325, 2007 WL 3225465, at *1 (9th Cir. Oct. 29, 2007)(citing
*Buckingham v. United States*, 998 F.2d 735, 739-40 (9th Cir.
1993)).  If a plaintiff establishes the existence of a reasonable
accommodation, the burden shifts to the defendant employer to
show that the accommodation would cause the employer undue
hardship.  *Barnett v. U.S. Air, Inc.*, 157 F.3d 744, 748 (9th Cir.
1988).

**B.   Disability under the Rehabilitation Act.**

**1.   Standards.**

A disability is defined under the Rehabilitation

Act as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Barnett*, 157 F.3d at 748 (court applied the definition of disability set out in the Americans with Disabilities Act [ADA], and noted the ADA's "standards of substantive liability are incorporated in the Rehabilitation Act.")(citing 42 U.S.C. § 12102(2) and *Coons v. Sec'y of the United States Dep't of the Treasury*, 383 F.3d 879, 884 (9th Cir. 2004)). The implementing regulations of the ADA, which apply to the Rehabilitation Act, define a major life activity as a function "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I).

> To be substantially limited in any of these activities, a person must be unable to perform the major life activity or be "significantly restricted as to condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity."

*Coons*, 383 F.3d at 885 (quoting 29 C.F.R. § 1630.2(j)).

## 2. Analysis.

Plaintiff argues she is unable to perform the major life activities of driving, seeing, walking, or sitting, and, therefore, she is disabled within the meaning of the Rehabilitation Act. Defendant, however, contends (1) driving is

20 – OPINION AND ORDER

not a major life activity; (2) Plaintiff's doctors opined she could perform the essential functions of her job without telecommuting; and (3) Plaintiff, therefore, is not disabled within the meaning of the Rehabilitation Act.

The Ninth Circuit has not specifically addressed the issue whether driving "in and of itself" is a major life activity. The district court in Hawaii, however, addressed the issue in *Kim v. Potter*, 460 F. Supp. 2d 1194 (D. Haw. 2006). In *Kim,* the plaintiff suffered seizures that prohibited him from driving or operating heavy machinery. The court concluded "neither driving nor operating heavy machinery, in and of themselves, are major life activities." *Id*. at 1200.

The Eleventh Circuit has reached a similar conclusion. *See, e.g., Chenoweth v. Hillsborough County*, 250 F.3d 1328 (11th Cir. 2001). In *Chenoweth*, the plaintiff suffered a seizure and was diagnosed with focal onset epilepsy. *Id*. at 1329. The plaintiff's doctor prohibited her from driving. The plaintiff, therefore, sought an accommodation from her employer to allow her to work two days a week at home and to vary her schedule at the office to accommodate her transportation needs. *Id*. The defendant refused Plaintiff's requested accommodations. The Eleventh Circuit concluded driving was not a major life activity:

> Although [the list of major life activities set out in 29 C.F.R. § 1630.2(I)] is not

> exhaustive, driving is not only absent from
> the list but is conspicuously different in
> character from the activities that are
> listed.  It would at the least be an oddity
> that a major life activity should require a
> license from the state, revocable for a
> variety of reasons including failure to
> insure.  We are an automobile society and an
> automobile economy, so that it is not
> entirely farfetched to promote driving to a
> major life activity; but millions of
> Americans do not drive, millions are
> passengers to work, and deprivation of being
> self-driven to work cannot be sensibly
> compared to inability to see or to learn.

*Id*. at 1329-30 (citations omitted).

The Second Circuit also reached this conclusion in *Colwell v. Suffolk County Police Department*, 158 F.3d 635, 643 (2d Cir. 1998)(court concluded driving is not a major life activity).

The Court finds the reasoning of the *Kim, Chenoweth,* and *Colwell* courts is persuasive.  The Court, therefore, concludes driving is not a major life activity and, accordingly, that Plaintiff's inability to drive does not mean she is disabled within the meaning of the Rehabilitation Act.

With respect to Plaintiff's assertion that she is also disabled in the major life activities of seeing, walking, or sitting, Dr. Alberts, as noted, informed the BPA in December 2005 that Plaintiff suffered from osteoarthritis of her back, osteoarthritis of both hips, chronic stable angina, and asthma and had undergone bilateral total hip-replacement surgeries.

Dr. Albert opined Plaintiff's "impairment from these issues will
be lifelong" and, based on her angina and mobility problems,
prohibited Plaintiff from riding public transportation because it
was more than a block from her house.

Although the Court did not find any case in which
the Ninth Circuit evaluated whether the inability to walk a block
constituted a sufficient limitation of the major life activity of
walking, the Seventh Circuit in *EEOC v. Sears, Roebuck & Co.*
found the plaintiff's "severe difficulty in walking the
equivalent of one city block was a substantial limitation
compared to the walking most people do daily." 417 F.3d 789, 802
(7th Cir. 2005). The court, therefore, held the district court
erred when it concluded no reasonable jury could find the
plaintiff was disabled under the ADA based on the plaintiff's
walking limitation. *Id.* at 802. This Court also finds
persuasive the reasoning of the *Sears* court and adopts it for
purposes of this case.

The Court notes, however, even if an issue of fact
exists as to whether Plaintiff is impaired in the major life
activity of walking and, therefore, is disabled under the
Rehabilitation Act, the undisputed facts show Defendant
reasonably accommodated Plaintiff as set forth below.

**C.    Reasonable Accommodation.**

The Rehabilitation Act prohibits employment

discrimination against qualified individuals on the basis of disability. *Walton*, 492 F.3d at 1005. Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ." 42 U.S.C. § 12112(b)(5)(A). Plaintiff bears the burden to establish that the accommodation she seeks is reasonable. *See Giebeler v. M & B Assoc.*, 343 F.3d 1143, 1157 n.10 (9th Cir. 2003).

Plaintiff repeatedly sought to telecommute as an accommodation due to problems with her vision and mobility. Defendant allowed Plaintiff to telecommute on a temporary basis pending medical support for Plaintiff's request. Before Dr. Bentley's letter dated February 17, 2006, however, Plaintiff's doctors did not require or suggest Plaintiff needed to work at home in order to perform the essential functions of her position. In December 2005, Dr. Bentley prohibited Plaintiff from driving at night, but he noted Plaintiff "would not be precluded from working during daylight hours and her corrected vision is good enough to preclude any need for special restriction within the work environment beyond her nighttime driving accommodation." Although Dr. Alberts prohibited Plaintiff from riding public transportation, he opined "I see no reason why [Plaintiff] cannot perform her work activities at a computer station providing she is able to shift positions

frequently for comfort, perform minor stretching every hour, and
avoid all stair climbing entirely."  On January 25, 2005, before
Plaintiff's eye surgery, Dr. Bentley opined Plaintiff's vision
reduction would not be a permanent restriction and noted
Plaintiff's "ability to drive in some settings is impaired, and
computer and reading may require some workplace modification to
allow positioning of reading material/computer monitor equipment
to enhance optimum visibility."  In January 2006, Dr. Irvine
released Plaintiff to work "regular duty - as tolerated."

        The record also demonstrates Defendant repeatedly
expressed a willingness to accommodate Plaintiff's inability to
drive at night by allowing her to work reduced hours.  Defendant
also was willing to allow Plaintiff to move and to stretch at her
work station.  Although Plaintiff may have wanted a different
accommodation, Defendant did not have the duty to provide the
accommodation of Plaintiff's choice.  *See Nelson v. Snow*, No.
C04-0349RSL, 2006 WL 828763, at *5 (W.D. Wash. Mar. 27,
2006)(citing *Stewart v. Happy Hermann's Cheshire Bridge, Inc.*,
117 F.3d 1278, 1285 (11th Cir. 1997)).  The Court, therefore,
concludes Defendant has established on this record that it
reasonably accommodated Plaintiff when she could still legally
drive from December 2004 through February 17, 2006.

        As noted, Dr. Bentley informed the BPA on February 17,
2006, that Plaintiff's peripheral vision was less than the

25 - OPINION AND ORDER

requirement for legal driving in Oregon and also informed the DMV
that Plaintiff could no longer drive and requested it suspend her
license.  Even though Dr. Alberts informed the BPA in December
2005 that Plaintiff could not use public transportation due to
her angina and walking issues and, therefore, it was difficult
for her to get to any BPA facility to do her work after she could
no longer legally drive, Defendant contends the ADA does not
require employers to aid employees in their commute to work as a
reasonable accommodation.

        The parties do not cite nor did the Court find any case
in which the Ninth Circuit held employers are required to assist
employees in their commute to work as a reasonable accommodation
under the ADA or Rehabilitation Act.  Courts in other
jurisdictions, however, have held employers are not required to
eliminate barriers outside of the work environment as a
reasonable accommodation under the ADA.  For example, in *Bull v.
Coyner*, the plaintiff suffered from Retinitis Pigmentosa, a
degenerative eye disease that rendered him legally blind.  2000
WL 224807, No. 98 C 7583, at *1 (N.D. Ill. Feb. 23, 2000).  The
defendants accommodated the plaintiff's disability in a variety
of ways, but the defendants prohibited their employees from
giving the plaintiff rides to and from work while on the City
payroll.  *Id*.  Ultimately the defendants terminated the
plaintiff's employment.  *Id*.  The plaintiff brought an action

26 - OPINION AND ORDER

under the ADA in which he alleged, among other things, that the
defendants failed to accommodate him because they did not require
their employees to drive him to and from work.  2000 WL 224807,
at *9.  The court, however, held the defendants did not fail to
reasonably accommodate the plaintiff because

> [a]ctivities that fall outside the scope of the
> job, like commuting to and from the workplace,
> are not within the province of an employer's
> obligations under the ADA.  After all, the ADA
> addresses discrimination with respect to any
> "terms, condition or privilege of *employment*."
> 42 U.S.C. § 12112 [emphasis supplied].  [The
> defendants], with full knowledge of [the
> plaintiff's] vision problems . . . had no
> legally-imposed obligation . . . and certainly no
> duty to require [their] employees to drive [the
> plaintiff] on company time.  Therefore, Defendants
> cannot be charged under the ADA with the duty of
> providing for [the plaintiff's] transportation.
> *See Arbogast v. Alcoa Build. Prod.*, 165 F.3d 31,
> 1998 WL 551933, at 2 (7th Cir. Aug. 27, 1998)
> (stating that an employer "might voluntarily
> choose to provide [an employee with] transpor-
> tation to be helpful, or to maximize its
> employees' capabilities, but the ADA does not
> require that it do so.").

*Id.*

Similarly, in *Salmon v. Dade County School District*,
the plaintiff, a school guidance counselor, suffered back
injuries that prevented her from sitting or standing for long
periods.  4 F. Supp. 2d 1157, 1159 (S.D. Fla. 1998).  After
driving her car for a long time, the plaintiff would have to
stretch and to rest her back.  *Id.*  The plaintiff brought an
action against the school board under the ADA in which she

27 - OPINION AND ORDER

asserted, among other things, that the school board had failed to
accommodate her disability by not transferring her to a school
that afforded her a shorter commute. *Id*. The court noted even
though the ADA requires an employer "to provide reasonable
accommodations that eliminate barriers in the work environment,"
it does not require an employer "to eliminate those barriers
which exist outside the work environment." *Id*. at 1163.  The
court found commuting to and from work was an activity "unrelated
to and outside the job" and, therefore, granted summary judgment
to the defendants as to the plaintiff's accommodation claim.  *Id*.

        In addition, the EEOC has found the regulatory
definition of "reasonable accommodation" does not impose a
requirement that employers aid their employees in getting to
work. *See* Def.'s Ex. 3.  In response to an inquiry by an
attorney, the EEOC advised by letter that "unless an employer
provides assistance for employees without disabilities in getting
to and from work, the employer does not have to provide
assistance to an employee with a disability in transferring from
an automobile to a wheelchair [on arrival at work]."  The EEOC
reasoned under the ADA

                [a]n employer is required to provide
                reasonable accommodations that eliminate
                barriers in the work environment, not ones
                that eliminate barriers outside of the work
                environment.  For example, an employer would
                not be required to provide transportation to
                work as a reasonable accommodation for an
                employee whose disability makes it difficult

28 - OPINION AND ORDER

or impossible to use public or private means
of transportation, unless the employer
provides such transportation for employees
without disabilities.

Def.'s Ex. 3 at 2.  Although the EEOC's letter is an "informal

discussion" rather than an official EEOC opinion, it is

informative with respect to the EEOC's interpretation of the

reasonable-accommodation issue.

        The Court finds the reasoning of *Bull, Salmon*, and the

EEOC's letter is persuasive.  Although it might be difficult for

Plaintiff to get to work, the Rehabilitation Act does not require

an employer to accommodate a disabled employee by getting her to

and from work.  Instead the requirements of the Rehabilitation

Act are limited to accommodating a disabled employee within the

work environment.

        The Court notes Plaintiff contends Defendant,

nevertheless, allowed other employees to telecommute on occasion.

Plaintiff, however, did not seek an accommodation of occasional

telecommuting.  Instead she sought to transfer her employment

permanently to a work-from-home status.  In any event, the record

does not reflect any BPA employee was allowed to telecommute on a

permanent basis in place of working at the office.  The BPA,

therefore, was not required to accommodate Plaintiff in such a

manner.  The Court, therefore,  concludes on this record that

Plaintiff's requested accommodation to telecommute permanently

was not reasonable even after Plaintiff could no longer legally

29 - OPINION AND ORDER

drive to work.

In summary, even if an issue of fact exists as to whether Plaintiff is impaired in the major life activity of walking and, therefore, is disabled under the Rehabilitation Act, the Court concludes on this record that Defendant reasonably accommodated Plaintiff under these circumstances.

Accordingly, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Cross-Motion for Partial Summary Judgment as to Plaintiff's claims for disability discrimination under the Rehabilitation Act.

**II. Plaintiff's Retaliation Claim under the Rehabilitation Act.**

Both parties move for summary judgment as to Plaintiff's retaliation claim.

"To make out a *prima facie* case of retaliation [under the Rehabilitation Act], [a plaintiff] must show that she engaged in protected activity (which filing of EEO complaints would be); [the defendant] subjected her to an adverse employment action; and a causal link exists between the two." *Pickens*, 2007 WL 3225465, at *2 (citing *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)).

Plaintiff contends Defendant did not accommodate her request to telecommute in retaliation for her "EEO activity." Defendant, however, contends it did not take any materially adverse action against Plaintiff, and, therefore, Plaintiff has not established

a *prima facie* case of retaliation.

> Adverse actions include "a wide array of
> disadvantageous changes in the workplace . . . ."
> *Ray*, 217 F.3d at 1240. . . .  An adverse employ-
> ment action is one that "causes a material
> employment disadvantage, such as a tangible change
> in duties, working conditions or pay." *Hutchinson
> v. Seagate Tech., LLC*, No. C 02-05763, 2004 WL
> 1753391, at *8 (N.D. Cal. Aug. 3, 2004)(citation
> omitted).  Indeed, actions such as transferring
> job duties, issuing undeserved performance
> ratings, or actions that negatively affect the
> employee's compensation are adverse employment
> actions. *Fonseca v. Sysco Food Servs. of Ariz.,
> Inc.*, 374 F.3d 840, 847 (9th Cir. 2004); *Yartzoff
> v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).
> Further, actions such as being excluded from
> meetings, seminars, and positions that would have
> made the employee eligible for salary increases,
> and being given a more burdensome work schedule,
> are sufficient to establish adverse employment
> actions. *Strother*, 79 F.3d at 869.  However, not
> every employment decision amounts to an adverse
> employment action.  *Ray*, 217 F.3d at 1240.

*Delacruz v. Tripler Army Med.,* 507 F. Supp. 2d 1117, 1123 (D.

Haw. 2007).

    Here the undisputed record reflects Defendant did not

terminate or demote Plaintiff; gave Plaintiff a successful rating

in her performance evaluation; did not reduce her compensation;

did not exclude her from any meetings, seminars, or positions

that would have made her eligible for salary increases; and, as

the Court already determined, reasonably accommodated her.  The

record also reflects Plaintiff requested retirement after

Defendant directed her to return to work at the TTC.  At the time

Plaintiff requested retirement, Plaintiff's doctors had not

31 - OPINION AND ORDER

provided Defendant with any support for Plaintiff's assertion
that she could not work at the TTC.  The Court, therefore,
concludes on this record that Defendant's directive to Plaintiff
to return to work at the TTC was not a materially adverse action.
Thus, Plaintiff has not established a *prima facie* claim of
retaliation.

Accordingly, the Court grants Defendant's Motion for Summary
Judgment and denies Plaintiff's Cross-Motion for Partial Summary
Judgment as to Plaintiff's claims that Defendant retaliated
against Plaintiff for her EEOC activities.

**III. Plaintiff's Remaining Claims.**

Plaintiff alleges in her remaining claims that Defendant
denied her request to telecommute because of her race or color,
age, and/or sex.  Defendant moves for summary judgment as to
Plaintiff's remaining claims.  Because the record lacks any
evidence that Defendant denied Plaintiff's request to telecommute
on any grounds other than Plaintiff's medical status and
Defendant's work needs, the Court grants Defendant's Motion for
Summary Judgment as to Plaintiff's remaining claims.


<u>CONCLUSION</u>

For these reasons, the Court **GRANTS** Defendant's Motion to
File a Response to Plaintiff's Additional Material Facts (#69),
**DENIES** Plaintiff's Motion to Strike (#74)**, GRANTS** Defendant's

32 - OPINION AND ORDER

Motion for Summary Judgment (#26), and **DENIES** Plaintiff's Cross-Motion for Partial Summary Judgment (#50).

    IT IS SO ORDERED.

    DATED this 29th day of January, 2008.


                  /s/ Anna J. Brown
                  _____
                  ANNA J. BROWN
                  United States District Judge

33 - OPINION AND ORDER